IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0320-WJM-KLM

NEIL PETERSON, and
PENTATHERM LLC,

    Plaintiffs,

v.

JENNIFER PICKERING,

    Defendant.

**Order Denying Defendant's Motion to Strike
Paragraphs 38–49 From Plaintiffs' Complaint**

In this action, Plaintiffs Neil Peterson and Pentatherm LLC sue Defendant Jennifer Pickering for misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101 *et seq*., breach of contract, unjust enrichment, conversion, and breach of fiduciary duty.  (ECF No. 1 ¶¶ 62–106.)  This matter is before the Court on Defendant's Motion to Strike Paragraphs 38–49 From Plaintiffs' Complaint ("Motion") (ECF No. 10) and Memorandum in Support ("Memorandum") (ECF No. 11).  For the reasons discussed below, the Motion is denied.

**I. BACKGROUND**

The following factual summary is drawn from Plaintiffs' Verified Complaint ("Complaint").  (ECF No. 1.)  Peterson founded Pentatherm LLC in December 2020 to pursue geothermal energy investment opportunities.  (ECF No. 1 ¶ 19.)  This work

involved identifying viable sites for geothermal power plants, leasing desirable parcels of land, and soliciting investments from third parties for the development of geothermal power generation projects. (*Id.*) Peterson hired Pickering as Chief Operating Officer ("COO") of Pentatherm LLC. (*Id.* ¶¶ 21–22.) As COO, Pickering provided geologic analysis and business development services. (*Id.*) Peterson also hired an engineer named David George, who is not a party in this action. Peterson alleges that George and Pickering are not members of Pentatherm LLC, and that as the only member of Pentatherm LLC, he has the sole right to any profits generated from any of Pentatherm LLC's business opportunities. (*Id.* ¶ 53.)

In March 2021, Pickering signed a "Confidentiality, Non-Disclosure, Non-Compete Agreement" ("Agreement"). (*Id.* ¶ 23.) The Agreement requires Pickering not to "circumvent, enter into competition with, pursue independently, obtain, or agree to seek or obtain . . . any interest in . . . business plans, or other proprietary information that is shared" with her as part of her employment with Pentatherm LLC. (*Id.*)

During the course of her work for Pentatherm LLC, Pickering was provided with confidential information, including analytical methods that were used to evaluate potential geothermal lease sites collected and developed by Peterson for Pentatherm LLC. (*Id.* ¶ 27.) Out of more than fifty parcels that Pentatherm LLC considered for investment, it identified one set of parcels in Nevada that it believed would be suitable for developing a geothermal power plant (the "Nevada Opportunity"). (*Id.* ¶ 28.) The Nevada Opportunity was the result of Pentatherm LLC's extensive proprietary research and analysis and constituted the company's most valuable asset. (*Id.* ¶ 29.)

After Pentatherm identified the Nevada Opportunity, Peterson requested that

Pickering lease the parcels.  (*Id.* ¶ 33.)  In November 2021, Pickering leased the parcels in her own name "in order to protect her own interests," and she refused to assign the leases to Pentatherm LLC.  (*Id.*)  Plaintiffs allege that by leasing the property in her own name, Pickering misappropriated the Nevada Opportunity, a trade secret owned by Pentatherm LLC, for her own benefit.  (*Id.* ¶¶ 71–73, 76.)  Based on this allegation, Plaintiffs sue Pickering for misappropriation of trade secrets, breach of contract, unjust enrichment, conversion, and breach of fiduciary duty.  (ECF No. 1 ¶¶ 62–106.)

On February 28, 2022, Pickering filed the instant Motion and Memorandum, requesting that the Court strike paragraphs 38–49 of the Complaint.  (ECF Nos. 10, 11.)  Plaintiffs responded to the Motion on March 21, 2022.  (ECF No. 15.)

## II. LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike under Rule 12(f) are disfavored.  *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985) (citing 5 Wright & Miller, Federal Practice and Procedure § 1380, at 783 (1969)).  "The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case."  *United States v. Smuggler-Durant Min. Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993).  Motions to strike are usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced.  *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001).

## III. ANALYSIS

In her Motion and Memorandum Pickering provides three separate grounds for striking portions of the Complaint.  (ECF No. 11 at 2–6.)  The Court addresses each argument separately below.

**A.      Paragraphs 38–49: Relevancy**

First, Pickering argues that paragraphs 38–49 of the Complaint should be stricken because they are immaterial to Plaintiffs' claims.  (ECF No. 11 at 5.)  In paragraphs 38–49, Plaintiffs allege that on July 13, 2021, Pickering engaged the law firm of Lloyd & Mousilli, PLLC ("Lloyd & Mousilli"), to assist in the establishment of a Delaware corporation called Pentatherm Inc.  (*Id.* ¶¶ 38–39.)  The Certificate of Incorporation for Pentatherm Inc. was filed by Attorney Feras Mousilli on August 9, 2021; Pickering, George and Peterson were listed as directors of Pentatherm Inc.  (*Id.*)

Peterson requested that he be made majority shareholder in Pentatherm Inc. because he had founded Pentatherm LLC and had made the most material contributions in identifying the Nevada Opportunity.  (*Id.* ¶ 41.)  But this request was denied, and Peterson learned that Pickering and George were planning to expel him from Pentatherm Inc. by calling a "meeting of the directors" with the assistance of Mousilli.  (*Id.* ¶ 42.)

On December 9, 2021, Peterson sent a letter to Mousilli, objecting to the calling of the meeting and noting that Pickering was acting in violation of the Agreement, which forbade her from competing with Pentatherm LLC.  (*Id.* ¶ 43.)  Mousilli responded that the meeting was properly called and that the Agreement contained no restriction on competition.  (*Id.*)

In her Memorandum, Pickering argues that "[i]t is entirely unclear how these

4

allegations relate to establishing the requisite elements of Plaintiffs' causes of action," and that the allegations were included in the Complaint for the "improper purpose of impugning the name of [Mousilli] and the law firm of Lloyd & Mousilli." (ECF No. 11 at 6.)

In response, Plaintiffs argue that they are alleging that Pickering used Pentatherm Inc. as part of her scheme to misappropriate Plaintiffs' trade secrets. (ECF No. 15 at 2.) Thus, Plaintiffs argue, paragraphs 38–49 are relevant to *how* Pickering misappropriated Plaintiffs' trade secrets, which is clearly relevant to the dispute in this case. (*Id.* at 3.)

Because striking pleadings is generally a drastic remedy, *see Smuggler-Durant Min. Corp.*, 823 F.Supp. at 875, motions to strike are usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced. *See Tri-State Generation*, 173 F.R.D. at 285. Based on the allegations in the Complaint, it is entirely feasible that Plaintiffs will attempt to prove that Pickering used Pentatherm Inc. to misappropriate trade secrets from Pentatherm LLC. The facts surrounding the formation of Pentatherm Inc. and the attempted removal of Peterson from Pentatherm Inc. would likely be relevant to that theory of liability. As a result, the Court cannot find that the allegations in paragraphs 38–49 of the Complaint have no bearing on the controversy.

Therefore, this portion of the Motion is denied.

**B.    Paragraphs 38–42: Attorney-Client Privilege**

Second, Pickering argues that paragraphs 38–42 should be stricken because they contain information that is protected by the attorney-client privilege. (ECF No. 11 at 2–4.) Pickering's argument is very brief:

5

> Paragraph 38 of Plaintiffs' Complaint purports to describe the terms of Pentatherm Inc.'s retainer agreement with Lloyd & Mousilli, which is an attorney-client privileged communication. Paragraphs 39-42 of Plaintiffs' Complaint describes in detail communications with attorney Feras Mousilli and alleged legal advice provided by attorney Mousilli, which would all be protected by Pentatherm Inc.'s attorney-client privilege.

(*Id.* at 3–4.)

The Court is unpersuaded by Pickering's arguments. The Court has reviewed the Complaint and finds that Pickering has mischaracterized the content of paragraphs 38–42. Completely contrary to Pickings argument, paragraph 38 of the Complaint *does not* describe the terms of Pentatherm Inc.'s retainer agreement with Lloyd & Mousilli. (ECF No. 1 ¶ 38.) It only states that Pickering signed an engagement letter with Lloyd & Mousilli. (*Id.*) And paragraphs 39–42 of the Complaint *do not* describe communications with Mousilli regarding legal advice. (*Id.* ¶¶ 39–42.)

Pickering has made no showing that the information described in paragraphs 38–42 is in any way protected by the attorney-client privilege. Of course, during the course of this litigation, and through the discovery process, Pickering can attempt to show that information in paragraphs 38–42 is indeed protected by the attorney-client privilege. And if she can establish that the attorney-client privilege applies, and has not been waived, she may move the Court for relief at that time.

**C.      Paragraphs 44–47: Compromise Offers and Negotiations**

Finally, Pickering argues that paragraphs 44–47 of the Complaint should be stricken because they contain inadmissible descriptions of settlement negotiations. (ECF No. 11 at 4–5.) Rule 408(a) of the Federal Rules of Evidence states that evidence of "(1) furnishing or offering or promising to furnish—or accepting or offering or

promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or statements made in compromise negotiations regarding the claim" is not admissible as evidence "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount."

In paragraphs 44–47 of the Complaint, Plaintiffs allege that Peterson sent a letter to Mousilli objecting to Pentatherm Inc. holding a "meeting of the directors" and Mousilli sent a response on behalf of Pentatherm Inc. offering to "resolve the dispute . . . with an entirely one-sided offer" that would result in Peterson being completely deprived of the Nevada Opportunity.  (ECF No. 1 ¶ 56.)

To be sure, Pickering has a viable argument that the settlement information ultimately may not be admissible at trial.  But the instant Motion is not a motion in *limine* seeking to exclude evidence from being introduced at trial—instead, Pickering seeks an advance ruling at the start of the litigation that the allegations in paragraphs 44–47 of the Complaint would never be admitted into evidence, and could not possibly be relevant to Plaintiffs' claims.   And at this early stage, it is difficult to say that the purported settlement negotiations have *no possible relevance* to Plaintiffs' claims.  After all, Rule 408 does allow admission into evidence of settlement information for purposes other than proving liability.  *See* Fed. R. Evid. 408(b) (specifically allowing use of settlement information for other purposes, such as proving a witness's bias or negating a contention of undue delay).

Pickering does not cite a single case from this circuit to support her argument that striking portions of the Complaint is appropriate at this juncture.  (*See* ECF No. 11 at 4–5.)  To the contrary, in this district, Courts have held that it is not "[their role—in the

preliminary stages of a lawsuit—to make decisions about what evidence ultimately may or may not be admitted before the jury." *Thomas v. City of Aurora*, 2021 WL 5068107, at *5 (D. Colo. July 30, 2021); *see also Parmar v. City of Aurora*, 2020 WL 7260745, at *3 (D. Colo. Dec. 10, 2020) ("It is not this Court's role at the very earliest stage of the lawsuit to make decisions about what evidence ultimately may or may not be admitted before the jury. Nor should a motion to strike under Rule 12(f) be used as a preemptive motion in *limine* to attempt to exclude specific evidence.").

Therefore, this portion of the Motion is also denied.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant Jennifer Pickering's Motion to Strike (ECF No. 10) is DENIED.

Dated this 3rd day of October, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge

8