# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**NEIL PETERSON** and
**PENTATHERM LLC**,

    *Plaintiffs*,

v.

**JENNIFER PICKERING**,

    *Defendant*.

Case No. 1:22-CV-00320-WJM-KLM

## PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS

Lloyd & Mousilli ("LM") has filed a motion for sanctions incorrectly alleging Plaintiffs' counsel attempted to serve an untimely discovery subpoena. (Dkt. 75). The motion is a preemptive strike intended to distract the Court from LM's own ethical violations which LM correctly predicted (because it knew of its ethical violations) that Plaintiffs planned to raise in a motion for disqualification.[1] LM's motion has no basis in law because Plaintiffs' subpoena was entirely proper.

Worse still, the motion has no basis in fact. It includes misrepresentations, omissions, and outright lies about the conduct of Plaintiffs' counsel, rendering LM's motion itself sanctionable. Incontrovertible email evidence proves these points. Indeed, the exhibits LM attaches to its *own motion* contradict the statements LM makes therein. The Court should deny LM's motion.[2]

---

[1] Plaintiffs plan to raise the issue of disqualification directly with LM to determine whether the parties can resolve their differences without intervention from the Court. If the parties are unable to resolve their differences, Plaintiffs plan to file a motion for disqualification.

[2] Plaintiffs reserve their right to seek sanctions for Defendant's frivolous filing here.

I.  **BACKGROUND**

    A.  **LM filed a motion for sanctions, without meeting and conferring, regarding a proper discovery subpoena that was never even served.**

Plaintiffs' attempt to serve a discovery subpoena on a third party, which is the basis of LM's motion, complied with the discovery deadlines in this case and in no event would be a basis for seeking sanctions.  This Court entered a Scheduling Order on April 29, 2021.  (Dkt. 33).  The order set a discovery cut-off for October 31, 2022.  (*Id.*).  The order did not preclude discovery subpoenas, or set an independent deadline for them, meaning such subpoenas were appropriate until the discovery deadline passed.  (*See id.*).  The parties jointly moved to extend the deadline twice.[3]  (Dkts. 67, 71).  Each time, the parties' proposed orders made clear that the original Scheduling Order would "carry forward" with one modification: depositions could be taken up until the new discovery deadline.  (Dkts. 67-1, 71-1).  Thus, the lack of restrictions on discovery subpoenas for third parties would "carry forward" as well, meaning such subpoenas remained available until the new discovery period expired.  The Court granted the parties' joint motions, ultimately setting the discovery deadline as December 31, 2022.  (Dkts. 70, 74).  It is undisputed that Plaintiffs' counsel attempted to serve the discovery subpoena at issue here before that date. (Dkt. 75 at 3 ("[I]n late December 2022, Plaintiffs began trying to serve an additional subpoena for the production of documents.")).  Further, the subpoena was never even served; LM did not accept service of the subpoena via email, and Plaintiffs' process servers did not successfully serve the subpoena thereafter.

---

[3] After the events relevant to this motion, additional extensions of the discovery deadline have occurred.

> **B.     LM's motion for sanctions is a transparent attempt to forestall accountability for LM's ethical violations.**

LM's motion for sanctions is a preemptive attack that LM hopes will distract the Court from the ethical issues Plaintiffs were investigating leading up to LM's motion. This is a breach of contract and conversion suit brought by Plaintiffs Neil Peterson, a geologist, and Pentatherm LLC, a geothermal energy company started by Mr. Peterson. ***LM previously represented Pentatherm LLC and Mr. Peterson in his capacity as its sole owner. LM now represents an adverse party***, Defendant Jennifer Pickering, the person who Plaintiffs allege used confidential company information and improperly converted leases that Pentatherm LLC had identified and intended to lease for geothermal development.

Critically, ***LM's representation of Plaintiffs related directly to the events giving rise to this lawsuit*** and LM participated in many of the actions that led up to, and are squarely at issue in, this litigation. Mr. Peterson worked with Ms. Pickering and David George (a non-party) throughout 2021. Mr. Peterson indicated he was open to signing an agreement allotting them equity in Pentatherm LLC, though only on acceptable terms and conditions that recognized Mr. Peterson's important role in, and contributions to, the company. He, Ms. Pickering, and Mr. George looked for an attorney to help with this and other corporate matters in June and July of 2021. They ultimately found LM. Pentatherm LLC hired LM on July 13, 2021 through an engagement letter that Ms. Pickering signed on behalf of "Pentatherm." Ex. 1, Electronic Engagement Letter (July 13, 2021).[4]

---

[4] Plaintiffs have redacted portions of this motion and its exhibits that contain material they believe LM may claim is privileged. In truth, LM has no right to assert privilege over these materials because (1) Pentatherm LLC holds the privilege for the materials and (2) even if it did not, LM waived privilege by failing to object to the materials' use during the Pickering and George depositions. Still, out of an abundance of caution, Plaintiffs file this motion and exhibits with redactions and will file non-redacted versions available only to the Court and the parties as

To cover up the clear conflict of interest and improper representation of Ms. Pickering now, LM claims it was "initially retained by Pentatherm Inc., not Pentatherm LLC." Ex. 2, Letter from L. Barazi to J. Frawley (Jan. 5, 2023). ***This is untrue and LM knows it***. Pentatherm Inc. is an organization Mr. Peterson, Ms. Pickering, and Mr. George directed LM to create *three weeks after* LM was engaged, on August 3, 2021. Ex. 3, Emails Between LM and N. Peterson (Aug. 3, 2021); Ex. 4, Emails Between LM and J. Pickering (Aug. 3, 2021). On that date, LM emailed Mr. Peterson and Ms. Pickering "recommend[ing]" that they "[f]orm [a] Delaware C Corporation to serve as [a] parent company." *Id.* Mr. Peterson responded that LM should "proceed" with the recommendation and said the "name for the Delaware Corp will be Pentatherm Inc." Ex. 3. Next, Ms. Pickering responded, stating "I approve of using 'Pentatherm Inc.' as the name for the DE C-corp." Ex. 4. Six days later, LM filed the Certificate of Incorporation for Pentatherm Inc. Ex. 5, Certificate of Incorporation (Aug. 9, 2021). Thus, as of July 13, 2021—the date on which LM was engaged—Pentatherm Inc. was not incorporated, and its founders had not even directed LM to create it. This means LM's engagement letter listing "Pentatherm" as the client can only refer to Pentatherm LLC, the only Pentatherm entity that existed at the time. Ex. 1.

Communications originating from Ms. Pickering and LM itself show they both knew Pentatherm LLC was LM's client. The day after Ms. Pickering signed the engagement letter, she emailed LM a "proposed governance document" that she, Mr. Peterson, and Mr. George had prepared. Ex. 6, Email from J. Pickering to LM (July 14, 2021); Ex. 7, Attachment to Email from J. Pickering to LM (July 14, 2021). It listed "Pentatherm LLC" as the relevant entity—not Pentatherm Inc. Ex. 7 (stating that, in the event of the death of a partner, "Pentatherm LLC lays

---

restricted documents. Thus, if LM believes the documents should remain restricted, it may file a motion to restrict under Local Rule 7.2(e).

no claims to vested shares"). And it listed questions for LM to consider that made clear Pentatherm LLC was LM's client. Ex. 6 ("There are several items flagged for input or advice from you . . . and that's indicated in italics"); Ex. 7 ("*Do LLC's have a BoD or is this something that would occur when converted to a corporation?*") (emphasis in original). For its part, LM listed "Pentatherm LLC" as its client in correspondence with Mr. Peterson, Ms. Pickering, and Mr. George. *E.g.*, Ex. 8, Meeting Invite (July 6, 2021); Ex. 6 (email chain from LM with "Pentatherm LLC, Intake Follow Up" in the subject line and an email from LM summarizing a meeting and stating: "[w]e discussed the options of stretching the existing *LLC* to achieve the desired goals, or establishing a new parent company").

After Pentatherm LLC engaged LM, Mr. Peterson grew unhappy with LM's services. As he discussed the formation of Pentatherm Inc. with Ms. Pickering and Mr. George, Mr. Peterson felt LM failed to adequately translate his original vision for Pentatherm LLC's ownership structure into an acceptable equity agreement that was fair to all involved. On November 29, 2021, he wrote an email terminating LM's services. Ex. 9, Emails Between N. Peterson and LM (Nov. 29, 2021).

LM fought back, arguing that Mr. Peterson did not have authority to terminate it. *Id.* But this was improper because Mr. Peterson, the sole owner of Pentatherm LLC, had every right to terminate LM, and LM had no right to refuse termination. Yet, refuse it did. And then it retaliated. Using LM's services and protocols, Ms. Pickering and Mr. George invalidly removed Mr. Peterson from the Board of Directors of Pentatherm Inc. (at a meeting featuring LM personnel) and Pentatherm Inc. then enlisted none other than LM to sue Mr. Peterson in Texas alleging Mr. Peterson breached fiduciary duties to it.[5] Ex. 10, George Dep. 36:21–25, 37:1–6 (Dec. 7, 2022);

---

[5] It is not clear at all what these alleged breaches were. At her deposition, when asked what actions Mr. Peterson took that were contrary to Pentatherm Inc.'s interests, she only listed Mr. Peterson's

5

Ex. 11, Pickering Dep 59:17–61:1, 137:1–9 (Jan. 25, 2023). Then, importantly, LM orchestrated the improper transfer of the leases *at issue in this case*—which rightfully belong to Pentatherm LLC—to Pentatherm Inc. *Id.* And even more concerning, it appears LM and Ms. Pickering were plotting to sue Mr. Peterson (and, presumably, transfer the leases) before Mr. Peterson was even removed from the Board of Pentatherm Inc. In an audio recording from prior to Mr. Peterson's removal, Ms. Pickering told Mr. George: "We need to contact Feras [Mousilli] and get that lawsuit filed as soon as possible." Ex. 11, Pickering Dep 64:1–19 (Jan. 25, 2023). Ms. Pickering confirmed at her deposition she was referring to the Texas lawsuit LM eventually filed against Mr. Peterson for Pentatherm Inc. *Id.*

These events are the precise subject matter of this litigation. Mr. Peterson's complaint alleges Ms. Pickering "maneuvered with a lawyer to try to cut [him] out of the venture entirely" and transferred leases rightfully belonging to Pentatherm LLC to Pentatherm Inc. instead (in breach of her contract with Pentatherm LLC). (Dkt. 1 ¶¶ 5, 9). LM is now using privileged and confidential information and its very own acts as weapons against its former client, Pentatherm LLC. In addition, LM is a key fact witness in all of the underlying communications, transactions, and illicit maneuvering.

Because these events are the basis of the present lawsuit, LM has a conflict of interest requiring its disqualification. Mr. George's recent deposition highlighted this fact. On December 7, 2022, Mr. George testified that LM drafted the Transfer of Lease agreement that gave Pentatherm Inc. the leases at issue in this case. Ex. 10, George Dep. 36:21–25, 37:1–6 (Dec. 7, 2022). He also testified that Pentatherm Inc. was not formed until after LM's services were

---

attempt "to terminate our engagement with Lloyd & Mousilli" which stopped the "finalization of [Pentatherm Inc.'s] corporate formation." Ex. 11, Pickering Dep 63:1–12 (Jan. 25, 2023).

6

engaged, further undermining LM's frivolous claim that it was initially engaged by that entity. *Id.* at 81:10–12.

Due to the ever-increasing evidence of LM's conflict of interest, Plaintiffs' attorneys turned their attention to LM's privilege log. The log lists several communications that include LM and Mr. Peterson. Ex. 12, LM Privilege Log (Oct. 13, 2022). Of course, a law firm cannot withhold documents from a former client on the grounds that they are privileged. Plaintiffs brought this to LM's attention on December 23, 2022. Ex. 13, Letter from J. Frawley to L. Barazi (Dec. 23, 2022).

Six days later, LM went on the offensive. It emailed Plaintiffs' counsel accusing them of "harassment" for sending a discovery subpoena to Mr. George, even though LM had known about the subpoena since December 20, 2022, and did not raise any complaints about it at that time. (Dkt. 75-2). Inexplicably, on January 2, 2023, LM threatened to move for sanctions based on the mere *attempt* to serve a discovery subpoena on Mr. George. (*Id.*). LM's sanctions threat was perplexing given LM's previous knowledge of the subpoena and the alternative ways LM could have handled its ostensible concerns with the subpoena (for example, LM could have accepted service of the subpoena while reserving its right to move to quash it).

On January 4, 2023, in an effort to understand the factual underpinnings outlined above, Plaintiffs again raised issues with LM's privilege log. Ex. 14, Email from J. Frawley to L. Barazi (Jan. 4, 2023) ("Please note that we recently wrote to you regarding issues related to your discovery responses and your privilege log, to which we have received no response."). LM responded by filing its motion for sanctions, without meeting and conferring, *the next day*. (Dkt. 75). It is clear this was a desperate response to the issues Plaintiffs raised—and a tactical move intended to distract from its own ethical violations—again, because LM did not wait to conduct a meet and confer with Plaintiffs' counsel before filing the motion. (As discussed below, LM's claim that

7

Plaintiffs' counsel refused to meet and confer is entirely false. Plaintiffs *sought* a meet and confer no less than two times before LM filed its motion, and *LM* refused to participate. LM misled the Court about this indisputable fact.)

### C. LM's motion for sanctions is the latest in a series of unwarranted, unprofessional, personal attacks on Plaintiffs' counsel.

LM's motion repeatedly refers to Plaintiffs' attempt to serve a simple discovery subpoena as "harassment." (Dkt. 75 at 3, 5). This is a complete mischaracterization. But it is not a new one. LM, likely realizing it cannot win on the merits of this case, has chosen to wage a personal campaign against Plaintiffs' counsel, hoping they will simply abandon the lawsuit (they will not). This campaign has featured repeated mischaracterizations and exaggerations. When Plaintiffs asked for deposition dates for Mr. George (who was eventually deposed) and Feras Mousilli (whose actions are central to this matter), LM responded as follows: "STOP WITH THESE STUPID GAMES, JOSH. I don't have time for you or this ridiculous gamesmanship." Ex. 15, Emails Between J. Lax and L. Barazi (Oct. 6, 2022) (caps in original). Plaintiffs' counsel responded that there were "no games" and pointed out "the District Court found the whole chain of events involving these two witnesses to be relevant to the claims in this case." *Id.*; *see also Peterson v. Pickering*, No. 22-CV-0320-WJM-KLM, 2022 WL 4768307, at *3 (D. Colo. Oct. 3, 2022) (denying LM's motion to strike paragraphs from the Complaint that describe actions taken by Mr. George and Mr. Mousilli and noting that those paragraphs include information that will "likely be relevant to [Plaintiffs'] theory of liability"). LM responded: "Josh, I don't have time to school you on depositions. Go consult your superiors—or better yet, a rule book. Then, do not write us ever again regarding their availability for a deposition." Ex. 15. Later in the same email chain, LM characterized Plaintiffs' request for depositions as a "campaign of harassment." *Id.* These types of personal attacks and misrepresentations have been the rule—not the exception—in

8

Plaintiffs' communications with LM. Now, LM has elevated its unprofessional attacks on Plaintiffs' counsel to the Court in its completely unwarranted motion for sanctions.

## II.   ARGUMENT

The Court should deny LM's motion because (1) it fails to show sanctions are warranted, (2) it relies on factual claims that are demonstrably untrue, (3) LM has not shown it incurred any costs as required for a sanctions award (though Plaintiffs' counsel has when it was required to respond to a baseless sanctions motion), and (4) granting LM's motion would violate the due process rights of Plaintiffs and their counsel.

### A.   LM fails to show sanctions are appropriate under 28 U.S.C. § 1927 or the Court's inherent powers.

LM asks for sanctions under 28 U.S.C. § 1927 and the Court's inherent powers. (Dkt. 75 at 3–6). Sanctions are not appropriate under either.

#### 1.   *Sanctions are not justified under 28 U.S.C. § 1927.*

Sanctions are not warranted under 28 U.S.C. § 1927. That statute permits recovery of fees and costs from an attorney who "unreasonably and vexatiously" "multiplies the proceedings." *Id.*

*First*, counsel has not acted unreasonably and vexatiously. Unreasonable and vexatious conduct occurs "when an attorney acts recklessly or with indifference to the law." *Martin for estate of Martin v. Greisman*, 754 F. App'x 708, 713 (10th Cir. 2018) (citation and quotation omitted). "This is an extreme standard, and fees should be awarded only in instances evidencing a serious . . . disregard for the orderly process of justice." *Id.* (quoting *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015)).

Plaintiffs' counsel did not exhibit disregard for the process of justice by trying to serve a discovery subpoena. To start, contrary to LM's argument, the subpoena was proper and timely. As outlined above, the deadline for serving such subpoenas "carried forward" each time the Court

9

Case No. 1:22-cv-00320-WJM-KAS   Document 85   filed 02/01/23   USDC Colorado
pg 10 of 14

extended the discovery deadline, and Plaintiffs' attempt to serve the discovery subpoena occurred before the relevant deadline. *Supra* Section I.A. Counsel did not act unreasonably and vexatiously by trying to serve a proper and timely discovery subpoena.

If Plaintiffs' counsel misread the scheduling orders, they did so in good faith, did not intentionally violate a Court order, and did not act unreasonably and vexatiously. At worst, counsel misinterpreted the Court's orders. But a "misinterpretation" is not "sufficient for a finding of reckless disregard for the duty owed by counsel to the Court." *Barrientos-Sanabria v. Holte*, No. 11-CV-00838-KLM, 2013 WL 3270597, at *4 (D. Colo. June 27, 2013). Further, this Court has, in some circumstances, enforced discovery subpoenas served after the close of discovery. *E.g.*, *ORP Surgical, LLP v. Howmedica Osteonics Corp*, No. 1:20-CV-01450-RBJ, 2021 WL 5280192, at *4 (D. Colo. Nov. 12, 2021). Surely then, an attempt to serve an untimely discovery subpoena cannot not justify the "extreme" remedy of § 1927 sanctions. *Greisman*, 754 F. App'x at 713.

*Second*, the subpoena did not multiply the proceedings. Attorneys multiply proceedings when they extend or delay them. *E.g.*, *Perez v. United Air Lines*, Inc., 362 F. Supp. 2d 1230, 1248 (D. Colo. 2005) (explaining sanctions were not justified where there were no "delaying tactics"); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 951 (N.D. Ill. 2021) (noting that to justify sanctions, "the actions [in question] must multiply the proceedings, meaning prolong the case"). For instance, the filing of a frivolous appeal multiplies proceedings. *Lewis v. Cir. City Stores, Inc.*, 500 F.3d 1140, 1153 (10th Cir. 2007). The discovery subpoena at issue here has not delayed or extended proceedings. So, even if it were served unreasonably and vexatiously—which it was not—the subpoena would not warrant sanctions under § 1927.

### 2. *Sanctions are not justified under the Court's inherent powers.*

Under the Court's inherent powers, sanctions may be warranted for "willful disobedience of a court order" or when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive

10

reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). For reasons already described, counsel's conduct does not meet this standard.

> **B.  LM's motion for sanctions includes factual misrepresentations, omissions, and lies that render the motion itself sanctionable.**

Ironically, LM's motion for sanctions is, itself, sanctionable. Under the Federal Rules of Civil Procedure, the Court may sanction attorneys for the "knowing filing of a false and misleading pleading." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993) (citing Fed. R. Civ. P. 11). LM's motion qualifies for several reasons.

To start, the motion lies about LM's attempts to meet and confer. Lema Barazi, of LM, states in a "Certificate of Conference" that "on December 29, 2022, and January 2, 2023, [Ms. Barazi], counsel for the moving party, attempted to meet and confer with John Frawley, Plaintiffs' counsel." (Dkt. 75 at 7). Ms. Barazi did not attempt to meet and confer with Mr. Frawley on December 29, 2022. The email she cites in support of this claim (1) was not directed to Mr. Frawley and (2) *did not request a meet and confer*. (Dkt. 75-2). Ms. Barazi's January 2, 2023 email—which did request a meet and confer—also was not directed to Mr. Frawley.[6] (*Id.*).

The lies continue. LM claims Plaintiffs' counsel refused to meet and confer. (Dkt. 75 at 5, 7). In truth, Plaintiffs' counsel emailed LM *twice* to schedule a meet and confer before LM filed its motion for sanctions. Ex. 16, Email from J. Lax to L. Barazi (Jan. 4, 2023); Ex. 17, Email from J. Hollars to L. Barazi (Jan. 2, 2023). Joshua Lax sent LM an email on behalf of all Plaintiffs' counsel titled "Meet and Confer" to schedule a meeting just two days after LM requested one. Ex. 16. The email shows Plaintiffs' counsel intended to discuss two issues: Plaintiffs' concerns with LM's improprieties and, specifically, the concerns LM had raised; the email stated "[w]e are happy to discuss any issues on your side." *Id.* Another of Plaintiffs' counsel, Jacob Hollars, *also*

---

[6] Mr. Frawley was copied on the emails.

11

separately emailed LM, well before it filed its motion for sanctions, stating "I am unavailable today to confer, but am available tomorrow or Wednesday to confer via videoconference." Ex. 17. LM incorrectly told the Court that Plaintiffs' counsel refused to meet and confer.

Next, LM lies about an email Plaintiffs' counsel sent. LM states that on December 20, 2022, Plaintiffs' counsel tried to serve the discovery subpoena "upon Defendant's counsel as an attachment to an unrelated email." (Dkt. 75 at 3; Dkt. 75-1). But the email was not "unrelated" to the subpoena; the email attached a letter to LM that *described* the subpoena to give notice under FED. R. CIV. P. 45(a)(4). Ex. 18, Email and Attached Letter from J. Lax to L. Barazi (Dec. 20, 2022) (describing "the annexed subpoena we are serving on David George for the Viridly related documents he discussed at his deposition").

LM appears to have purposefully filed an incomplete exhibit to cover this up. Its exhibit concerning the December 20, 2022 email includes the email itself, ***but only two of its three attachments***. (Dkt. 75-1). Remarkably, it does not include the third attachment that shows LM's representations to the Court are untrue—namely, the very letter that described the discovery subpoena. (*Id.*). Clearly, LM excised one of the three attachments in order to mislead the Court and support LM's false claim that the email was "unrelated" to the subpoena. Plaintiffs have attached the email and *all* of the attachments to this response. Ex. 18.

Finally, LM misrepresents an email it sent and the response of Plaintiffs' counsel. LM states that, after Plaintiffs' counsel tried to serve the discovery subpoena, LM emailed to demand that the "harassment of Mr. George cease immediately," yet "Plaintiffs' counsel refused to respond." (Dkt. 75 at 3). This is misleading. LM's email did not request or require a response. (Dkt. 75-2 (December 29, 2022 email from L. Barazi to Plaintiffs' counsel)). Moreover, it is hard

12

to understand LM's concern about Plaintiffs' subsequent attempts to serve a subpoena when LM could have simply accepted service.

Notably, this is not the first time LM has filed mischaracterizations before the Court. An Order the Court issued less than four months ago demonstrates this point. *Peterson v. Pickering*, No. 22-CV-0320-WJM-KLM, 2022 WL 4768307, at *3 (D. Colo. Oct. 3, 2022) ("The Court has reviewed the Complaint and finds that Pickering has mischaracterized the content of paragraphs 38–42.").

In sum: LM's motion for sanctions is sanctionable itself because it is packed with demonstrably untrue information meant to mislead the Court.

### C. LM has not shown it incurred any costs as a result of the discovery subpoena.

"A party seeking attorney's fees and costs has the burden of proof as to entitlement and amount, and runs the risk that its fees and costs will be denied if it does not carry this burden." *Barrientos-Sanabria*, 2013 WL 3270597, at *6. LM does not, anywhere in its motion, describe the amount of fees and costs to which it claims it is entitled. Therefore, LM's motion for fees and costs must fail.

### D. Granting LM's motion would violate the due process rights of Plaintiffs and their attorneys.

LM asks the Court to sanction Plaintiffs and the individual attorneys working on Plaintiffs' case. A "person sanctioned is entitled to notice and opportunity to be heard." *Live Face on Web, LLC v. Integrity Sols. Grp., Inc.*, No. 16-CV-01627-CMA-STV, 2020 WL 1304553, at *3 (D. Colo. Mar. 19, 2020). Their allegedly "objectionable conduct must be identified sufficiently to make the opportunity to respond meaningful." *Id.* Further, "specific findings are necessary" to justify sanctions. *Id.* Thus, to succeed in its request for sanctions, LM is required to describe the specific actions that Plaintiffs and *each attorney* took that are allegedly sanctionable. LM has not

13

done so. It makes no allegations concerning Plaintiffs' conduct. As for Plaintiffs' counsel, LM states there are "a myriad of attorneys involved in this case" for Plaintiffs and "Defendants believes [sic] that each of them was involved in the sanctionable conduct." (Dkt. 75 at 5–6).

### III. CONCLUSION

For the foregoing reasons, the Court should deny LM's motion for sanctions.

Dated:   February 1, 2023                              Respectfully submitted,

                                                                                          */s/* Greg G. Gutzler
Greg G. Gutzler
Joshua J. Lax
**DiCELLO LEVITT**
485 Lexington Avenue
Tenth Floor, Suite 1001
New York, NY 10017
Tel: 646-933-1000
Fax: 646-494-9648
ggutzler@dicellolevitt.com
jlax@dicellolevitt.com

John J. Frawley
**DiCELLO LEVITT**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: 312-214-7900
Fax: 312-253-1443
jfrawley@dicellolevitt.com

Jacob F. Hollars
**SPENCER FANE LLP**
1700 Lincoln St., Suite 2000
Denver, CO 80203
Tel: 303-839-3800
Fax: 303-839-3838
jhollars@spencerfane.com

*Counsel for Plaintiffs Neil Peterson and Pentatherm LLC*