IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-0320-WJM-KAS

NEIL PETERSON, and
PENTATHERM LLC,

    Plaintiffs,

v.

JENNIFER PICKERING,

    Defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiffs Neil Peterson ("Peterson") and Pentatherm LLC's ("Pentatherm") (jointly, "Plaintiffs") Motion for Summary Judgment ("Motion"). (ECF No. 89.)  Defendant Jennifer Pickering ("Pickering") responded to the Motion, and Plaintiffs filed a reply.  (ECF Nos. 109, 118.)  For the reasons set forth below, the Court denies the Motion.

## I. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the

nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS[1]

Peterson founded Pentatherm, LLC, a geothermal energy startup, in December 2020. (ECF No. 89 at 3 ¶ 6.) Sometime before its founding, Pickering became interested in the geothermal industry, and on November 25, 2020, she messaged non-party David George ("George") about her desire to "break into" the industry. (*Id.* at 4 ¶ 13.) In the message to George, Pickering expressed apprehension about the move, stating that she "worr[ied] that [she] didn't know enough about the basics of geothermal energy production and the *how* [*sic*] to make it commercially viable." (*Id.* at 4 ¶¶ 14–15.) Pickering contends that in the time between this message to George and the summer of 2021, she "spent significant time learning everything she could about the geothermal industry." (ECF No. 109 at 4 ¶ 13.)

In January 2021, George signed a "Confidentiality, Non-Disclosure, Non-Compete Agreement." (ECF No. 89 at 4 ¶ 11.) And on March 29, 2021, Pickering "signed a similar agreement with the same title" (the "Agreement"). (*Id.* at 4 ¶ 12.) Under the terms of the Agreement, Pickering was restricted from "independently"

---

[1] The following facts are taken from the parties' briefs. All facts are undisputed unless otherwise noted.

2

pursuing any of Pentatherm's "business plans" and prohibited from "entering in competition with" Pentatherm or using its "Confidential Information" for any "purpose other than [a] Permitted Use." (*Id.* at 4–5, ¶¶ 18–20.) The Agreement defines "Confidential Information," in relevant part, as

> any and all technical and non-technical information disclosed or otherwise made available by Pentatherm and/or its representatives to [Pickering], and/or created by [Pickering] in . . . her engagement, including but not limited to information regarding: (a) business, financial and tax status and plans, (b) exploration and development plans; (c) geological, geophysical and other scientific data and information; . . . (e) drilling methods and plans: and (f) other proprietary information, . . . plans, . . . analyses, . . . forms of leases and related documents, . . . proposals, bids, . . . completed or potential property acquisitions, and the existence of any business discussions, negotiations, or contractual relationships between Pentatherm and any third party.

(ECF No. 1-2 at 2 ¶ 1.) A "Permitted Use" is defined as "provision of services to Pentatherm." (*Id.* at 2 (unnumbered paragraph).) Pickering contends that the Agreement is "poorly drafted" and "legally unenforceable." (*E.g.*, ECF No. 109 at 4 ¶ 17.)

  Peterson, Pickering, and George worked together to identify "land suitable for geothermal development" to lease. (ECF No. 89 at 5 ¶ 23.) Between April and July 2021, the three exchanged e-mails regarding various available parcels in Nevada. (*Id.* at 5–6 ¶¶ 24–30.) Ultimately, they settled on pursuing leases in Steptoe Valley, Nevada, with Peterson directing Pickering to "get the leases on behalf of Pentatherm." (*Id.* at 6 ¶¶ 34–35.) During this period, Pickering used a "pentatherm.net" e-mail address, identifying herself as the "COO" and "co-founder" of Pentatherm. (*Id.* at 6–7 ¶¶ 37–38; ECF No. 109 at 8 ¶¶ 37–38.)

3

The parties dispute who owned Pentatherm at the time Peterson instructed Pickering to purchase the lease.  (*Compare* ECF No. 89 at 7 ¶ 43, *with* ECF No. 109 at 9 ¶ 43.)  Plaintiffs assert that Peterson was and had always been the sole owner of Pentatherm but that he was open to sharing equity with Pickering and George.  (ECF No. 89 at 7 ¶¶ 42–43.)  Pickering asserts that she already owned one third of Pentatherm.  (ECF No. 109 at 9 ¶¶ 42–43.)  Peterson, Pickering, and George engaged Lloyd & Mousilli, a Texas-based law firm to assist in establishing a corporation to be called "Pentatherm Inc."  (ECF No. 89 at 9 ¶ 49.)  Pickering signed the engagement letter on behalf of "Pentatherm" on July 13, 2021.  (ECF No. at 87-5 at 4.)  On the same day, Pickering applied for the Steptoe Valley leases in her own name.  (ECF No. 89 at 8 ¶ 52.)  Later, Pickering and George removed Peterson from the newly formed Pentatherm Inc., and Pickering transferred the leases to Pentatherm Inc.  (*Id.* at 11 ¶¶ 80, 82.)

### III. ANALYSIS

Plaintiffs seek partial summary judgment as to both of their claims: specifically, they contend that the Court should grant summary judgment as to liability and hold a jury trial with respect only to damages.  (*Id.* at 12–17.)

**A.    Standing**

Pickering asserts Pentatherm lacks standing to bring this action against one of its members under Colorado law.  (ECF No. 109 at 22.)  She therefore urges the Court to "summarily dismiss[]" its breach of contract claim.  (*Id.*)  As Plaintiffs point out, this argument is a procedurally improper motion in disguise.  (ECF No. 118 at 11.)  The Court agrees, and will not consider this argument any further.

4

**B.     Breach of Contract**

The elements of a breach of contract claim under Colorado law are "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1041 (D. Colo. 2012).

Pickering asserts the Agreement does not establish the existence of a valid contract because its terms are unenforceable under Colorado law. (ECF No. 109 at 23.) She argues the Agreement is unenforceable because there is no evidence that she was ever a Pentatherm employee or that she ever received confidential information as defined by law. (*Id.*)

Plaintiffs respond to Pickering's first argument in a footnote in their reply that completely fails to engage with Colorado's complicated statute governing the enforcement of noncompete agreements, Colo. Rev. Stat. § 8-2-113, which Pickering cites in her response brief. (*See* ECF No. 118 at 12; ECF No. 109 at 23.) Colorado law disfavors noncompete agreements generally but enforces agreements satisfying certain exceptions. *See generally* Colo. Rev. Stat. § 8-2-113. Section 8-2-113 has been amended since the events underlying the alleged breach. Colo. Leg. Serv. Ch. 441 (H.B. 22-1317). However, the amendments are not retroactive. *Allstate Ins. Co. v. Cruz*, 2023 WL 6147077, at *8 n.5 (D. Colo. Sept. 20, 2023); *MGA Home Healthcare Colorado, LLC v. Thun*, 2023 WL 7003489, at *7 n.8 (D. Colo. Oct. 24, 2023).

Prior to August 2022, Colorado law provided that noncompete agreements entered into by "[e]xecutive and management personnel" were enforceable against them. Colo. Rev. Stat. § 8-2-113(2)(d) (2021). The test for who qualifies as such

5

personnel focuses on job *responsibilities*, not titles (though Pickering's title of COO suggests an executive role). *DISH Network v. Altomari*, 224 P.3d 362, 367–68 (Colo. App. 2009). The parties vigorously dispute what Pickering's job responsibilities were:

- Plaintiffs assert Peterson identified the Steptoe Valley leases using his experience and knowledge of the area, but Pickering asserts that she identified the leases using her extensive experience gained in the oil and gas industry (*Compare* ECF No. 89 at 5–6 ¶¶ 26–32, *with* ECF No. 109 at 6–7 ¶¶ 31–32, 14–15 ¶¶ 5–11); and

- Plaintiffs assert Peterson was and has always been the sole owner of Pentatherm, but Pickering claims she owned one third of the company (*Compare* ECF No. 89 at 7 ¶ 43, *with* ECF No. 109 at 8 ¶ 42, 10 ¶ 54).

These factual disputes preclude summary judgment on the breach of contract claim because if Pickering truly either (1) had primary responsibility and set strategy for what was then Pentatherm's only business pursuit or (2) was an owner of the business, then § 8-2-113(2)(d) would allow for the enforcement of the Agreement against her. It makes no difference whether Pickering was ever an "employee" of Pentatherm if she was an owner as she claims. *Altomari*, 224 P.3d at 367–68; s*ee Core Progression Franchise LLC v. O'Hare*, 2022 WL 1741836, at *2 n.3 (10th Cir. May 31, 2022) (rejecting argument that franchise owner could not be management personnel because he was not employee); *Fitness Together Franchise LLC v. EM Fitness, LLC*, 1997 WL599391, at *21 (D. Colo. Apr. 15, 1997) (finding franchise owner is management personnel).

The Court need not address Pickering's second argument because the factual dispute about the Agreement's enforceability is enough to deny summary judgment.

**C.     Conversion**

Plaintiffs' conversion claim likewise relies on the enforceability of the noncompete provisions of the Agreement.  (*See* ECF No. 89 at 15–16 ("Pentatherm LLC had a right to possession of the Steptoe Valley leases, at the time they were converted, based on the Agreement and Mr. Peterson's instruction that Ms. Pickering acquire the leases 'on behalf of Pentatherm.'").)  Therefore, summary judgment is also inappropriate for Plaintiffs' conversion claim.

Moreover, the Court expressly rejects Pickering's argument that a conversion claim is unavailable for the leases under Colorado law.  Pickering's reading of *Mullen v. Sweetwater Development Corporation*, 619 F. Supp. 809 (D. Colo. 1985), is arguably incorrect.  In that case, the court explained a defendant's argument that "there can be no conversion of real property" under Colorado law, stating that it agreed with that argument; however, in its analysis, the court articulated a slightly narrower rule that an "action for conversion will not lie for *damage* to real property."  619 F. Supp. at 819 (emphasis added).  But even if the Court were to adopt Pickering's reading of *Mullen*, it would reject her argument that *Mullen* is controlling in this case.

Since *Mullen*, the Colorado Court of Appeals has affirmed a judgment for conversion of a deed to real property, specifically referring to the deed as "personal property."  *Montano v. Land Title Guar. Co.*, 778 P.2d 328, 330 (Colo. App. 1989).  Sitting in diversity, the Court must follow substantive state law as authoritative, even over conflicting federal law.  *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011) ("If the [rule] is procedural, federal law applies, but if it is substantive, then the court must follow the law of the forum state.") (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)); *see Erie*, 304 U.S. at 78 ("Except in matters governed by the

7

Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state . . . whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision.").

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS that Plaintiffs' Motion for Summary Judgment (ECF No. 89) is DENIED.

Dated this 22nd day of February, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge